2026 IL App (1st) 260408-U

FIRST DISTRICT,
SIXTH DIVISION
July 24, 2026

No. 1-26-0408

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* L.B. Jr., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County, Illinois |
| (The People of the State of Illinois, | ) | Juvenile Justice and |
| | ) | Child Protection Department, |
| Petitioner-Appellee, | ) | Child Protection Division. |
| | ) | |
| v. | ) | No. 24 JA 325 |
| | ) | |
| L.B. Sr., | ) | Honorable |
| | ) | Pamela Saindon, |
| Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Trial court's modified dispositional order is affirmed, as it is not against the manifest weight of the evidence.

¶ 2   The State filed a petition for adjudication of wardship of minor L.B. Jr. based on allegations of domestic violence related to his father, respondent L.B. Sr., and that his mother Jennifer forced his half-siblings to steal from retail stores while he was in the car. Following a dispositional hearing on July 23, 2025, the trial court adjudged L.B. Jr. a ward of the court, found

L.B. Sr. and Jennifer unable to care for, protect, train, or discipline L.B. Jr., and placed him under the guardianship of the Department of Children and Family Services (DCFS) with the right of placement. L.B. Sr. appealed the dispositional order, and this court reversed and remanded for a new dispositional hearing. *In re L.B. Jr.*, 2026 IL App (1st) 251452-U, ¶ 32.

¶ 3        On remand, the trial court found L.B. Sr. unable to parent L.B. Jr. because, during the interim, he became disengaged with and stopped attending individual therapy, which was his remaining reunification service. Jennifer was found to be fit, willing, and able, and L.B. Jr. was returned to her custody. L.B. Sr. appeals the modified dispositional order, arguing it is against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 4                                        I. BACKGROUND

¶ 5        L.B. Sr. and Jennifer have one child together, L.B. Jr., born on February 23, 2023. L.B. Jr. has two older half-siblings, J.A. and M.A., by a different father. Leading up to DCFS's involvement, L.B. Sr. and Jennifer lived together with all three minors.

¶ 6        On April 12, 2024, Jennifer was arrested and charged with retail theft. On April 26, 2024, the State filed a petition for adjudication of wardship and motion for temporary custody of all three minors, alleging neglect from not receiving necessary support for their well-being, neglect due to an injurious environment, and abuse due to substantial risk of physical injury. 705 ILCS 405/2-3(1)(a)-(b), (2)(ii) (West 2024). The State alleged Jennifer, who was in jail, had two prior indicated reports for substantial risk of physical injury and environment injurious to health and welfare. Also, J.A. and M.A. reported that L.B. Sr. "makes [Jennifer] and the children shoplift from stores" and that he physically harmed them and Jennifer. The trial court granted temporary custody of the minors to DCFS with the right of placement. L.B. Jr. was placed with Lynne, his fictive kin. M.A. and J.A. were placed with a paternal aunt.

¶ 7    The court held an adjudication hearing on April 29, 2025, where they stipulated to two facts related to domestic violence: (1) DCFS Investigator Rebecca Muraski observed "holes" in the kitchen cabinets and the master bedroom door, which J.A. said were "from arguments" between Jennifer and L.B. Sr., and (2) L.B. Sr. was ruled out as a potential placement for the minors due to a "need to further explore allegations and reports of domestic disturbances in the home." The trial court adjudicated all three minors abused and neglected.

¶ 8    On July 23, 2025, the court held a dispositional hearing. Lakeside Community Committee caseworker LaDonna Powell testified that L.B. Sr. completed domestic violence and parenting classes and was consistent and making progress in individual therapy. *L.B. Jr.*, 2026 IL App (1st) 251452-U, ¶ 13. His therapist recommended ongoing services, although these services were not specified and no additional referrals were mentioned. *Id.* Although L.B. Sr. was granted unsupervised visits in June 2025, they did not occur due to the agency's delay in observing visits and conducting a Child Endangerment Risk Assessment Protocol (CERAP) of L.B. Sr.'s home. *Id.* ¶¶ 12, 14.

¶ 9    The trial court adjudged L.B. Jr. a ward of the court and found L.B. Sr. unable (excluding financial reasons) to care for, protect, train, or discipline L.B. Jr. Jennifer was arrested again on June 24, 2025, and was incarcerated at the time of the dispositional hearing. She was also found unable (excluding financial reasons) to care for, protect, train, or discipline all three minors. The court granted guardianship of L.B. Jr. to DCFS with the right to place him.

¶ 10    On January 12, 2026, on L.B. Sr.'s appeal of the dispositional order, we reversed, finding it was based solely on L.B. Sr.'s ongoing individual therapy and his lack of unsupervised visitation with his son. *Id.* ¶¶ 25-27. We remanded for a new dispositional hearing so the court

could hear and consider any relevant updates concerning the best interests of L.B. Jr., unsupervised visits, and L.B. Sr.'s progress in individual therapy. *Id.* ¶¶ 29-30.

¶ 11    On January 20, 2026, L.B. Jr.'s half-siblings J.A. and M.A. were returned to Jennifer's custody due to her completion of all services, ongoing engagement in individual therapy, and ability to provide the minors with a safe, appropriate home. She was also receiving ongoing support from Grace House, a program for women leaving incarceration, and her retail theft case was being "referred to Mental Health," so she was not facing any jail time.

¶ 12    A new dispositional hearing for L.B. Jr. was held on February 20, 2026, at which both L.B. Sr. and Jennifer requested L.B. Jr. be returned to their custody. Powell testified that L.B. Jr. was still living with Lynne Taylor, and her home was still safe and appropriate. However, Lynne had given a 14-day notice for L.B. Jr., requesting that he be removed due to her own physical limitations and declining health.

¶ 13    Powell testified that L.B. Jr. and Sr. have a strong bond and that L.B. Sr.'s only remaining service was individual therapy. Although L.B. Sr. was engaged in therapy at the last dispositional hearing, Powell received a status report from his therapist in January indicating that he became inconsistent in attendance, distracted and disengaged due to work-related commitments, and stopped attending altogether in July 2025. Powell planned to re-refer him to address any outstanding goals. Powell also testified that L.B. Sr. has stable housing with a roommate, Lynne's son, and his own room, which he intends to share with L.B. Jr. L.B. Sr. is employed at his church, but Powell "would not say it is stable" income to financially meet the needs of L.B. Jr. Powell also mentioned that he needs a bed for L.B. Jr., and she would ask him about obtaining other work.

¶ 14        A CERAP of L.B. Sr.'s home was conducted in November 2025. Since then, L.B. Sr. has had unsupervised visits with L.B. Jr. in his home a couple of times a week for two to four hours. Powell had not done any unannounced drop-ins but did some scheduled observations to see them in the home together. She has seen only positive interactions and recommended overnight visits based on their strong bond and L.B. Jr. asking for his father. Powell believed both L.B. Sr. and Jennifer "could use" unsupervised overnight visits prior to L.B. Jr. returning home.

¶ 15        Powell recommended L.B. Jr. be adjudged a ward of the court, but returned home to both parents jointly. Though L.B. Sr. and Jennifer are not in a relationship, they discuss L.B. Jr. and his visitation. The agency did not have safety concerns about L.B. Jr. returning home to either parent, however, Powell "would want to *** meet with the parents to see what return home looks like" and how they would coordinate co-parenting. That conversation had not happened yet, but Powell believed it to be "necessary before return home could take effect." Both parents want L.B. Jr. back and are open to arranging visitation, preferring him with either of them over foster care. Lynne also believed it was time for L.B. Jr. to return home.

¶ 16        The State asked the court to adjudge L.B. Jr. a ward of the court, to find Jennifer fit, willing, and able to parent L.B. Jr., but to find L.B. Sr. unable because of the outstanding individual therapy. The State requested L.B. Sr. start overnight visits and have the parents discuss co-parenting in the interim while he re-engages in therapy. The Guardian Ad Litem agreed with the State's assessment. L.B. Sr. and Jennifer requested joint return home.

¶ 17        The trial court adjudged L.B. Jr. a ward of the court and granted custody to Jennifer only, finding her fit, able, and willing to care for, protect, train and discipline L.B. Jr. The court found L.B. Sr. unable to care for, protect, train, or discipline L.B. Jr. The court found it significant that L.B. Sr. not "short shrift the therapy," as it is a "very important part of making sure that the

conditions that brought the children in are being met." L.B. Sr. would not have to necessarily complete therapy, but at least "meaningfully engage[ ] *** for [his] sake and [his] child's sake." L.B. Jr. was returned to Jennifer's custody, and a section 2-24 Order of Protective Supervision was entered. See 705 ILCS 405/2-24 (West 2024). L.B. Sr. appeals.

¶ 18                                      II. ANALYSIS

¶ 19        In determining if a minor should be made a ward of the court, the Juvenile Court Act (Act) (705 ILCS 405/2 *et seq*) (West 2024)) mandates a two-step process. The first step is the adjudication hearing, where the trial court determines whether the minor is abused or neglected. 705 ILCS 405/2-21. The second step is the dispositional hearing, where the court determines "whether it is in the best interests of the minor and the public that the minor be made a ward of the court." *Id.* §2-22(1). If so, the court "shall determine the proper disposition best serving the health, safety, and interests of the minor and public." *Id.* Possible dispositions include: (1) continued custody with the minor's parent; (2) placed with a third party under section 2-27 of the Act; (3) restored to the custody of the parent, "provided the court shall order the parent *** to cooperate with [DCFS] and comply with the terms of an after-care plan***"; or (4) ordered partially or completely emancipated. *Id.* §2-23(1)(a).

¶ 20        Before the court can decline to place the child with a parent, it must find the parent "unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or [is] unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor" remains in the parent's custody. *Id.* §2-27(1). The "paramount consideration" at a dispositional hearing is the best interest of the child. *In re Kelvion V.*, 2014 IL App (1st) 140965, ¶ 23.

¶ 21     A trial court's determination regarding dispositional unfitness or inability will be reversed only if the findings of fact are against the manifest weight of the evidence or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order. *In re Daniel G.*, 2021 IL App (1st) 210640, ¶ 54. "A decision is against the manifest weight of the evidence if the facts clearly demonstrate that the court should have reached the opposite result." *In re N.B.*, 191 Ill. 2d 338, 346 (2000). Under this standard, "we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses and has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain." *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002).

¶ 22     L.B. Sr. does not challenge the trial court making L.B. Jr. a ward of the court or returning L.B. Jr. to Jennifer's custody. Instead, he challenges only the trial court's finding that he is unable to parent L.B. Jr. as against the manifest weight of the evidence because he never abused or neglected his son and Powell testified that the agency "wanted to give L.B. Jr. back first, and work with [L.B. Sr.] on any therapy issues subsequently."

¶ 23     First, whether L.B. Jr. was abused or neglected is the relevant inquiry at the adjudication, not dispositional phase. See 705 ILCS 405/2-21. The purpose of a dispositional hearing is to determine the "proper disposition best serving the health, safety, and interests of the minor and public." *Id.* §2-22(1). The modified dispositional order meets this standard, and the court's finding that L.B. Sr. is unable is not against the manifest weight of the evidence.

¶ 24     The trial court, not the agency, determines what disposition is in L.B. Jr.'s best interest considering all the evidence. The trial court is intimately familiar with the evidence and observed Powell's in-person testimony. It is not our place to reweigh the evidence, and we will not overturn the trial court's findings merely because we would have reached a different result. *In re*

*A.P.*, 2013 Il App (3d) 120672, ¶ 17. Although the agency staffed return home of L.B. Jr. to both parents, Powell also felt that a discussion about co-parenting and starting unsupervised overnight visits were necessary prior to a joint return home. L.B. Sr. also needed to finish arrangements for L.B. Jr. by getting him his own bed, and Powell wanted to further discuss L.B. Sr.'s financial circumstances to determine if he had a stable income for raising his son. Most importantly, L.B. Sr. stopped engaging in individual therapy, his only remaining reunification service.

¶ 25    Referencing our previous ruling, L.B. Sr. argues that since he has now had routine unsupervised visits, not achieving the "therapy gold star" is insufficient proof of his inability. However, the crucial distinction from the prior dispositional hearing is that, at that time, L.B. Sr. was meaningfully engaged and making substantial progress in therapy. He has since relapsed, becoming distracted, inconsistent, and ceasing attendance altogether in July 2025. Seven months later, he still had not resumed sessions, despite this being his last remaining reunification service posing a barrier to custody. While L.B. Sr.'s progress continues in other respects, the agency's recommended services are crucial and must be followed.

¶ 26    As the trial court noted, completion of individual therapy is not required before reunification, but meaningful participation and demonstrable progress are essential. Our prior decision directed the court to consider updated information regarding L.B. Sr.'s therapy, and it properly did so. L.B. Sr.'s argument disregards that mandate and understates the importance of engaging in court-ordered rehabilitative services, including therapy, which are central to evaluating parental fitness and ensuring the child's best interests and safety. For these reasons, we cannot say the trial court's inability finding is against the manifest weight of the evidence, or that it abused its discretion in selecting the disposition. See, *e.g.*, *In re Chelsea H.*, 2016 IL App (1st) 150560, ¶ 90 (engagement in and completion of some, but not all, recommended services is

sufficient grounds for affirming a dispositional order); *In re A.U.*, 2024 IL App (1st) 231727, ¶ 79 (same).

¶ 27                                   III. CONCLUSION

¶ 28        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County. We encourage L.B. Sr. to immediately re-engage in individual therapy, upon which a dispositional review hearing should be set as soon as practicable with the objective of reunification, provided it is in L.B. Jr.'s best interests. If L.B. Sr. demonstrates meaningful progress, the court may consider returning L.B. Jr. to his father's joint care, subject to continued compliance and any appropriate safeguards.

¶ 29        Affirmed.